IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA, | | |
| | * | |
|     Plaintiff, | | |
| | * | |
|        v. | | CIVIL NO.: WDQ-07-887 |
| | * | |
| 16 SOUTH FREDERICK STREET | | |
| BALTIMORE, MARYLAND 21202 | * | |
| | | |
|     and | * | |
| | | |
| CONTENTS OF BANK OF AMERICA | * | |
| CHECKING ACCT. 003928151148, | | |
| | * | |
|     Defendants, | | |
| | * | |
|     and | | |
| | * | |
| MORGAN-JONES, LLC d/b/a | | |
| JONES INDUSTRIAL NETWORK, and | * | |
| MOJO HOLDINGS, LLC, | | |
| | * | |
|     Claimants. | | |

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

The Government seeks forfeiture of $636,851.69 from Morgan-Jones's and MOJO Holdings' ("Claimants") bank account and the premises located at 16 South Frederick Street, Baltimore, Maryland 21202 ("Claimants' Real Property") as property involved in money laundering transactions in violation of 18 U.S.C. § 1956, and derived from proceeds traceable to violations of 8 U.S.C. § 1324.

Pending is Claimants' Motion to Dismiss the Verified Complaint for Forfeiture and Petition to Release Property.  For

1

the reasons discussed below, Claimants' motion to dismiss and petition to release property will be denied.

I.   Background

The Claimants own a temporary employment services company that provides staffing and consulting services in the Baltimore/Washington D.C. area.  On March 29, 2007, agents of the U.S. Immigration and Customs Enforcement Agency ("ICE") executed a search warrant at the Claimants' office located at 16 South Frederick Street, in Baltimore, Maryland.  The agents seized 86 boxes of bank records and electronically stored data.  The Government also seized $636,851.69 from Claimants' bank account at the Bank of America.

On April 6, 2007, the Government sought forfeiture of the Claimants' real property and contents of the Bank of America checking account.  Paper No. 1.  On April 17, 2007, the Claimants filed a Statement of Interest in Property.  Paper No. 3 and 4. On May 1, 2007, Claimants filed a Motion to Dismiss the Verified Complaint for Forfeiture and Petition to Release Property.  Paper No. 5.

II.   Analysis

A.   Dismissal of the Verified Complaint

1.   Standard of Review

Rule E(2)(a) of the Supplemental Rules for Admiralty or Maritime Claims ("Supplemental Rules") requires that the

complaint "state the circumstances from which the claim arises
with such particularity that the defendant or claimant will be
able, without moving for a more definite statement, to commence
an investigation of the facts and to frame a responsive
pleading."  Supplemental Rule E(2)(a).  "Application of this
standard to civil forfeiture actions has evolved to the standard
stated in G(2)(f)."  Supplemental Rule G Advisory Committee
Notes.  The complaint must "state sufficiently detailed facts to
support a reasonable belief that the government will be able to
meet its burden of proof at trial."  Supplemental Rule G(2);
*United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002).

     2.   Discussion

     The Claimants contend that the Government's complaint
contains insufficient facts to support their claim of forfeiture.
The Claimants argue that the Government has failed to allege
facts that prove they knowingly hired an illegal alien.
Claimants' Supp. Mem. at 9.  The Claimants assert that the
Government has not provided specifics about the alleged hiring of
illegal aliens, which prevents them from investigating the claims
and forming a responsive pleading.  *Id.* at 10.  Further, the
Claimants argue that Agent Shauna L. Williard's declaration in
support of forfeiture is supported by vague and conclusory
factual allegations.  *Id.* at 5.

     The Government counters that the complaint states a legally

sufficient cause of action.   The Government argues that the
complaint furnishes facts about the hiring of illegal aliens over
a three-year period, which includes information about one alien
hired by the Claimants.   Pl.'s Resp. Mem. at 4.   The Government
notes that the complaint identifies a specific date on which the
Claimants hired a confidential informant who was a known illegal
alien, which demonstrates that they *knew* that the alien was
illegal.   *Id.* at 5.   Thus, the Government maintains that the
factual allegations support a reasonable belief that it will be
able to meet its burden of proof at trial.   *Id.*

The complaint provides the Claimants with sufficient
information to respond, and adequately alleges illegal activity
in violation of 18 U.S.C. § 1956.   The complaint details the
circumstances of the money laundering scheme involving the
hiring of illegal aliens, and is supplemented by a declaration
detailing the Claimants' illegal activity.   Accordingly, the
motion to dismiss will be denied.

B.   Release of Property

Section 983(f) of the Civil Asset Forfeiture Reform Act of
2000 ("CAFRA") provides a mechanism for the release of property
during the pendency of a civil forfeiture proceeding.   18 U.S.C.
§ 983(f) (2000).   The Government must release the seized property
if:

(A) the claimant has a possessory interest in the property;

  (B) the claimant has sufficient ties to the community to provide assurance that the property will be available at the time of the trial;

  (C) the continued possession by the Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business . . . ;

  (D) the claimant's likely hardship from the continued possession by the Government of the seized property outweighs the risks that the property will be destroyed . . . or transferred if it is returned to the claimant during the pendency of the proceeding; and

  (E) none of the conditions set forth in paragraph (8) applies.

*Id. § 983*(f)(1)(A)-(E).

  Paragraph (8) states that the property in question should not be released if it:

  (A) is contraband, currency, or other monetary instrument, or electronic funds unless such currency or other monetary instrument . . . constitutes the assets of a legitimate business which has been seized;

  (B) is to be used as evidence of a violation of the law;

  (C) by reason of design or other characteristics, is particularly suited for use in illegal activities; or

  (D) is likely to be used to commit additional criminal acts if returned to the claimant.

*Id.* § 983(f)(8).  To obtain release under this statute, a claimant must submit a petition "setting forth 'the basis on which' the claimant has met all of these 'requirements' for release."  § 983(f)(8); *United States v. Undetermined Amount of U.S. Currency*, 376 F.3d 260, 264 (4th Cir. 2004).  The district court may order release of properly seized property only if "the

5

claimant demonstrates that the requirements . . . have been met."
19 U.S.C. § 983(f)(6).

1.    Claimants' Possessory Interest in the Property

The parties do not dispute that the Claimant has a
possessory interest in the bank account and the real property.

2.    Claimants' Ties to the Community

The Claimants contend that they have sufficient ties to the
community, which will assure that the property will be available
at trial.  The Claimants have been serving the Maryland region
for over seven years, and currently have over $500,000 in
accounts receivables.  Def.'s Supp. Mem. at 14.  The Claimants
note that the owners reside in Maryland, and have not been
previously convicted of crimes.  *Id.*  The Claimants argue that
the bank account is not necessary for trial because ICE seized
all of their financial records.  *Id.*  Thus, the Claimants assert
that their real property will sufficiently protect the
Government's interest.  *Id.*

The Claimants generate all of their revenue from services
provided in Maryland, and have continuing business obligations in
the region.  The owners of the company also reside in Maryland
and have no previous criminal history.  Therefore, the Claimants
have demonstrated that they have significant ties to the
community.

3.    Substantial Hardship to the Claimants

The Claimants assert that seizure of their only bank account has caused them substantial hardship.  The Claimants argue that release of the funds is necessary to pay monthly expenses, which will ensure that the company will remain solvent.  The Claimants note that their monthly expenses are $521,875, and since the seizure and media attention surrounding the circumstances, the company's income has been reduced to $370,000.  Def.'s Supp. Mem. Ex. 8 and 9.  The Claimants complain that several current customers have refused to pay outstanding invoices, and the company has been unable to attract new customers.  The Claimants note that four employees--almost half of their staff--have quit because of concerns about the financial status of the business. *Id.* at 15.

The Government counters that the Claimants have failed to demonstrate a substantial hardship because the expense report is an inaccurate reflection of the company's current financial status.  The Government notes that the document does not account for the reduction in temporary employees or state how much the company is currently earning with the reduced business activity. Pl.'s Resp. Mem. at 7-8.  Further, the Government asserts that the Claimants admit they are able to cover payroll, which suggests the legitimate portion of the business is generating income.  *Id.* at 9.  The Government also argues that the

Claimants' hardship is attributable to the arrest of the illegal

aliens, not to the seizure of the funds.  *Id.* at 8.

The Claimants have not demonstrated a substantial hardship.

The Claimants' financial instability arises primarily from the

negative publicity they received after the seizure, not from the

seizure itself.  The Court is not inclined to release the

property based on the tangential effects of the seizure.  The

Claimants have also failed to demonstrate that access to the

funds has severely hampered the business.  Although the

Claimants' income has been reduced, they have failed to document

their inability to meet financial obligations.

> 4.   Whether Claimants' Hardship Outweighs the Risk that the
>       Property will be Destroyed, Damaged, Lost, Concealed,
>       or Transferred

The Claimants argue that their financial hardship outweighs

the risk that the funds will be destroyed.  The Claimants assert

that if the funds are not released it is likely that the business

will dissolve.  The Claimants also contend that the forfeiture of

over $1 million violates the Excessive Fines Clause of the Eighth

Amendment because it is grossly disproportionate to the statutory

penalties for the offense charged.  Def.'s Supp. Mem. at 16.

Relying on the decision in *United States v. Bajakajian*, 524 U.S.

321 (1998), the Claimants assert that the harm caused--hiring one

illegal alien--does not justify the forfeiture of $1 million.

*Id.* at 19.  Thus, the Claimants maintain that their real

8

property, valued at $400,000, is sufficient to satisfy any judgment, and the bank account funds should be released.  *Id.*

The Government counters that the risk of loss is likely because the funds would be allocated to cover salaries and other expenses.  The Government also asserts that the Claimants' excessive fines argument is without merit because the evidence reveals that they hired numerous illegal aliens which yielded proceeds in violation of 8 U.S.C. § 1324 and 18 U.S.C. § 1956.  Thus, the Government argues that the penalty is commensurate with the offense.

The risk of loss is substantial if the funds are released.  The Claimants represented that the funds were needed to pay expenses, and noted the dramatic decrease in their monthly income.  The risk of dissipation is likely if the funds are released because the Claimants cannot guarantee their financial stability at the time of trial.  Predictions about the financial future of the business does not reduce the risk.  The risk of loss is outweighed by the hardship because the Claimants have failed to demonstrate that without the funds the business will dissolve.

The forfeiture does not constitute an excessive fine.  The Eighth Amendment provides that "excessive fines [shall not be] imposed, nor cruel and unusual punishment inflicted."  U.S. Const., amend. VIII.  The Excessive Fines Clause "limits the

9

government's power to extract payments, whether in cash or in kind, as punishment for some offense."  *Austin v. United States*, 509 U.S. 602, 609-10 (1993).

The burden is on the party challenging the constitutionality of the forfeiture to demonstrate its excessiveness.  *United States v. Ahmad*, 213 F.3d 805, 813 (4th Cir. 2000).  "If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Bajakajian*, 524 U.S. at 337.  To determine the proportionality of a forfeiture, the court should consider "the nature and extent of the criminal activity, its relation to other crimes, its penalties, and the harm it caused."  *Ahmad*, 213 F.3d at 813; *see also Bajakajian*, 524 U.S. at 337-40.

The Government's seizure of $1 million is not constitutionally excessive.  The Claimants are charged with knowingly placing illegal aliens in temporary employment which constitutes harboring of aliens in violation of 8 U.S.C. § 1324. This is a "specified unlawful activity" in violation of 18 U.S.C. § 1956.  The Claimants are also charged with money laundering because the proceeds of such harboring were used in financial business transactions, including payment of wages.  *See* 18 U.S.C. § 1956(a)(1).

Further, the forfeiture was based on multiple transactions occurring over three years.  This is distinguishable from the

10

single reporting offense in *Bajakajian*, when a property owner

tried to take his money out of the country without reporting it.

524 U.S. at 326, 337 n.12.  The maximum penalty for violation of

§ 1956 is a fine of not more than $500,000 or twice the value of

the property involved in the transaction.  18 U.S.C. §

1956(a)(1).  This severe penalty indicates that Congress

considers money laundering a serious offense.  *Bajakajian*, 524

U.S. at 336 ("[J]udgments about the appropriate punishment for an

offense belong in the first instance to the legislature.").  In

addition, the harboring of illegal aliens for commercial

advantage has a substantial effect on the U.S. economy.  The

Claimants' actions have exposed other companies (who used their

services) to federal charges and has jeopardized their reputation

in the business community.  Thus, the Claimants cannot

demonstrate that forfeiture of the funds is grossly

disproportionate to the offenses charged.

> 5.   Conditions Set Forth in Section 983(f)(8)

The Government argues that Morgan Jones is not a legitimate

business because its bank account funds are traceable to the

Claimants' alleged illegal activities.  The Claimants counter

that the allegations of illegal activity associated with their

business does not render them illegitimate.  The Claimants assert

that the alleged harboring of aliens is not an inherently

illegitimate business activity like the selling of drugs.  Def.'s

Reply Mem. at 6.  Further, the Claimants contend that Morgan Jones has a stellar reputation in the business community and has never previously been accused of illegal activity.  *Id.*

The Claimants have failed to demonstrate that the funds are proceeds of a legitimate business.  There is sufficient proof that the Claimants used such funds for their illegal activities. To the extent that such funds were used to hire and pay illegal aliens, the business is not legitimate; therefore the Court will not release the funds.

III. Conclusion

For the reasons discussed above, the Claimants' motion to dismiss and petition to release property will be denied.


<u>September 20, 2007</u>                                    <u>       /s/                  </u>
Date                                              William D. Quarles, Jr.
                                                  United States District Judge